IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

GERALD SCOTT MAYEK,

                Plaintiff,

v.                                                                              OPINION and ORDER

GUNDERSEN HOSPITAL-BOSCOBEL, WI,               19-cv-811-jdp
EILEEN S. GAVIN, and JOHN and JANE DOES,

                Defendants.

---

Plaintiff Gerald Scott Mayek, appearing pro se, is a prisoner at Wisconsin Secure Program Facility (WSPF). Mayek alleges that after he was injured at his prison job, hospital staff failed to diagnose his fractured vertebra, and WSPF staff wouldn't help him after he returned to the prison. Numerous motions are before the court.

**A. Amendments to complaint**

    **1. Proposed amended complaint**

Mayek alleges that his back was injured when someone pushed him to the floor during his shift working at the prison kitchen. After Mayek complained of increasing pain that made him unable to walk, defendant Dr. Eileen Gavin (a doctor at WSPF) sent him to Gundersen Hospital in Boscobel. Mayek told the doctor at Gundersen Hospital about his pain and inability to walk, but after giving Mayek a CT scan, the doctor told him that nothing was broken and to put ice on the injury. For the next three weeks, Mayek was in severe pain but no one would respond to his requests for medical care. A unit manager eventually sent him back to the hospital, where another CT scan showed that Mayek's L3 vertebra was fractured.

I granted Mayek leave to proceed on Eighth Amendment claims against Gavin and unidentified "John Doe" or "Jane Doe" unit staff for failing to do anything to help Mayek when

he complained about his severe pain. I also granted him leave to proceed on Wisconsin-law medical malpractice claims against the Doe doctor who misdiagnosed him and the hospital itself.

Mayek has made several attempts to amend his complaint. I'll start with his request to completely replace his original complaint. He filed a motion for leave to amend the complaint, Dkt. 40, along with a proposed amended complaint, Dkt. 41, a list of 45 individuals he means to name as the Doe defendants, Dkt. 42, and a document he calls "Requested damages from all defendants" that includes further explanation of the reasons he has added some of the proposed Doe defendants, Dkt. 43. Dkts. 41–43 operate together as one complete amended complaint. Mayek did not need to completely replace the original complaint to identify the Does listed in his original complaint. Nonetheless, he's still free to ask for leave to amend his complaint and this court "should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). I may deny leave to amend for undue delay, bad faith, undue prejudice to the opposing party, or futility. *See Dubicz v. Commonwealth Edison Co.*, 377 F.3d 787, 792 (7th Cir. 2004). Defendants object to the proposed amendment on several grounds.

In Mayek's motion for leave to amend, he states that he wants to "[a]dd a new legal claim of Mental and Emotional distress." Dkt. 40. Defendants object to this statement because it is vague as to whether Mayek means to add new Wisconsin-law claims for intentional or negligent infliction of emotional distress or whether he simply seeks damages for emotional harm the events caused him. The state defendants also note that Mayek has not filed a notice of claim about the events, which would be required to bring infliction of emotional distress claims against state-employee defendants. In his reply, Mayek clarifies that he is not attempting

to bring new state-law claims but instead wishes to note his damages for emotional harm. So I need not discuss potential new state-law theories of recovery further.

Defendants also argue that Mayek should not be allowed to amend his complaint in such piecemeal fashion, stating that his new allegations are spread among five documents, Dkts. 40–43 as well as his declaration at Dkt. 46. But his motion at Dkt. 40 merely restates his desire to bring claims for mental harm, and his declaration at Dkt. 46 restates allegations contained in Dkt. 41. I won't consider Dkt. 41 or Dkt. 46 as part of the proposed amended complaint. Mayek's new allegations, although spread over three documents, are well written by the standards of pro se plaintiffs litigating in this court and it should be easy enough for defendants to answer them.

Defendants also object that Mayek fails to properly explain which of the many proposed new defendants should be substituted for the particular Doe defendants named in his original complaint, and they ask for a more definite statement. Mayek has filed a brand-new complaint, so I don't need to consider whether or how his proposed new defendants fit into his original complaint at Dkt. 1. Defendants argue that even as a standalone complaint, Dkts. 41–43 do not properly articulate claims for relief under Federal Rule of Civil Procedure 8. For the most part, I disagree with defendants. I'll grant Mayek's motion for leave to amend his complaint and I'll consider Dkts. 41–43 to be the operative complaint. But I will screen his new allegations just as I screened his initial complaint.

I granted Mayek leave to proceed on Eighth Amendment claims against Dr. Gavin and WSPF unit staff for disregarding his repeated screams of agony and requests for medical attention. His new complaint adds that even after he was diagnosed with a fracture of his L3

vertebra, prison staff disregarded his cries for help. His condition worsened to the point that he attempted to cut his throat with a broken pill box.

Mayek states that he had interactions with all of the Alpha Unit staff during the events in the amended complaint and that each staff member disregarded his screams for help. In particular, he states that each of the correctional officers ignored him. That's sufficient to state an Eighth Amendment claim against proposed new defendant correctional officers Roth, Ellefson, Roach, Payne, Dicken, Gallinger, Weigel, A.J. Brown, Fishnick, Jaynes, Fedie, Castel, Thode, Miller, and Meyers. I infer from his allegations that he means to include correctional sergeants Ward, Green, Henneman, Tierney, Zimmer, Primmer, Jones, Allen, Miller, and Lathrop in the group of unit staff that ignored him, so I will grant him leave to proceed against the sergeants as well.

Mayek names a number of captains and lieutenants responsible for the Alpha Unit during the period in question; he says that they "failed in their supervisory positions to notify the appropriate medical care providers." Dkt. 43, at 2. That's a vague allegation that isn't enough to state Eighth Amendment claims against these supervisors. High-level prison staff cannot be liable for constitutional claims in their individual capacities under a theory of *respondeat superior*. *Jones v. City of Chicago*, 856 F.2d 985, 992 (7th Cir. 1988). But supervisors can be liable for a problem faced by prisoners by "facilitat[ing] it, approv[ing] it, condon[ing] it, or turn[ing] a blind eye for fear of what they might see." *Chavez v. Illinois State Police*, 251 F.3d 612, 651 (7th Cir. 2001).

Ordinarily, I would have Mayek replead his allegations against the supervisors to explain how those officials were personally involved in the events. But that isn't necessary because Mayek explains those claims in his briefs in reply: he says that the supervisors "failed to make

4

sure that their subordinates were properly trained and supervised." Dkt. 67, at 3. For a failure-to-train claim, Mayek would have to allege facts suggesting that these supervisors were responsible for training prison officials about the proper response to in inmate in severe pain and that the supervisors knew that their failure to train officers was likely to lead to a constitutional violation. *Butera v. Cottey*, 285 F.3d 601, 605 (7th Cir. 2002). Mayek states only generally that the supervisors failed to train their staff properly, but he does not provide any specific reason to think that the supervisors knew that this would cause inmates failing to receive medical care even though they screamed for help for weeks—a problem that officers shouldn't need training to know is inappropriate. So I will not allow Mayek to proceed on claims against the supervisors.

Similar to his allegations against correctional staff, Mayek attempts to bring claims against medical staff. He says that the nursing staff he names saw him on the unit but refused to do anything to help him. So I'll grant him leave to proceed on Eighth Amendment claims against defendant nurse practitioner Sandy McArdle and defendant nurses Erin Wehrle, Mike Kemerling, Becky Kramer, Julia Pintz, and Jeremy Richardson. He also names nurse supervisor Sheryl Kinyon and Health Services Manager L. Adams, but he alleges only that they failed in their supervisor duties. For the same reasons I denied Mayek leave to proceed against the correctional supervisors, I'll deny him leave to proceed against Kinyon and Adams.

I also granted Mayek leave to proceed on Wisconsin-law medical malpractice claims against the Doe doctor who misdiagnosed him and Gundersen Hospital itself. Mayek has named the Doe as Dr. Paul Mariskanish. Defendant Gundersen Hospital says that Mariskanish was working as a contractor at the hospital that day, not as an employee, so it will not accept service on Mariskanish's behalf. I'll direct the United States Marshal to accomplish service on

5

Mariskanish. The question whether Gundersen can be liable under a *respondeat superior* theory of liability for Mariskanish's actions will involve questions of fact that cannot be resolved at the pleading stage. So for now, Gundersen will remain in the case as a defendant.

### 2. Motion to add several defendants

Several months after filing his proposed amended complaint, Mayek filed a motion to add several new defendants: three more WSPF officers, two Gundersen doctors, and the state's Injured Patients and Families Compensation Fund. Dkt. 84.

Defendants object to this proposed amendment for a variety of reasons, one of which that Mayek doesn't explain why he waited so long to add these defendants. Mayek says that he didn't initially include the proposed new WSPF officers because "he didn't want to pull [them] into the dirt. But since everybody has been treating Mayek like he's something stuck to the bottom of their shoe, Mayek now feels that they belong there." Dkt. 105, at 1. This isn't a reason to overlook Mayek's delay in adding these defendants, so I'll deny his motion to add new WSPF officers.

Defendant Gundersen Hospital also makes a timeliness objection to Mayek adding two doctors: (1) Timothy Brieske, who Mayek says gave him inadequate pain medication; and (2) Lukasz S. Babiarz, who Mayek says misinterpreted his first CT scan results, overlooking his fractured vertebra. Mayek does not respond to Gundersen's argument that he waited too long to add Brieske, so I'll deny his motion to add Brieske. Mayek explains that he attempted to add Babiarz shortly after seeing the CT scan results for the first time. But in his reply, Mayek agrees to withdraw his request to add Babiarz because Gundersen explains that the first CT scan was of Mayek's pelvis, not his spine, so Babiarz was not interpreting images that included the fracture.

Defendants don't have a substantive objection to Mayek adding the Injured Patients and Families Compensation Fund for purposes of his medical malpractice claims, and Mayek is required to do so to recover amounts in excess of defendants' insurance coverage. So I'll grant this portion of his motion. *See* Wis. Stat. § 655.27(5).

### 3. Other motions to amend

Mayek has filed a motion asking to add as a defendant Wellhart LLC, who employed defendant Dr. Gavin as a contractor at WSPF. Dkt. 74. But claims based on a *respondeat superior* theory of liability are not allowed for constitutional claims under 42 U.S.C. § 1983. *Shields v. Illinois Dep't of Corr.*, 746 F.3d 782, 789 (7th Cir. 2014). I will deny Mayek's motion.

Mayek filed a proposed supplement to his complaint, Dkt. 85, but he followed with a motion to withdraw the supplement, Dkt. 121, which I will grant.

Mayek has filed a document he calls a "motion to join defendants," Dkt. 107, in which he states that that to "expedite matters in this case," he wishes to take the individual categories of state defendants he has named thus far and distill each category into one defendant. *Id.* at 2. For instance, he "request[s] to join all 7 sergeants as to be 1 (one)." *Id.* I will deny his motion because this is not how § 1983 claims work: each defendant will be liable for damages based on his or her individual culpability in disregarding his medical needs. I can't attribute claims against several staff members to one representative defendant.

Nonetheless, it appears that Mayek wants to streamline his claims. Ultimately, he is the master of his complaint and he gets to choose the parties he wishes to sue. I agree that it may be easier for him to prove claims against only a handful of defendants instead of dozens of them, and that's one of the reasons that inmates rarely bring cases against so many defendants at one time. On the other hand, dropping any particular defendant means that Mayek will not

be able to recover damages for the actions of that defendant. That choice is up to Mayek; I can't advise him how to choose. Before undergoing the expense and effort of accomplishing service on dozens of new defendants, I'll give Mayek a short time to decide whether he wants to dismiss any of the defendants against whom I am granting him leave to proceed in this order.

**B. Motions to compel discovery**

Mayek has filed a motion to compel the state defendants to allow him access to any prison video or audio recordings involving him between May 14 and July 1, 2019. Dkt. 44. In particular, he states that correctional officers have body cameras that would have recorded him in extreme distress, screaming in pain and asking for medical assistance.

In response, Boughton states that Mayek did not confer with opposing counsel before filing his motion to compel as required under Federal Rule of Civil Procedure 37(a)(1), which is often reason enough to deny a motion to compel. Had Mayek conferred with counsel, they could have discussed the problem with his blanket request for body camera footage: there's an extremely large amount of footage, and it is not easily searchable by inmate. I wouldn't compel defendants to scour the entire repository of footage to pick out the events involving Mayek. Counsel says that they are wiling to provide him with footage if he can identify the name of a particular staff member, or the date and approximate time for the footage he seeks. I'll deny this part of Mayek's motion, and he should confer with counsel about the precise footage he seeks.

Mayek also asks for footage from stationary surveillance cameras on the unit and for audio from the intercom system. Boughton explains that surveillance-camera footage is taped over unless it is specifically retained, and that the intercom audio is not recorded so there is nothing available from the intercom to be provided in discovery. Boughton also states that

8

Mayek has already been provided with video of a particular incident occurring in May 2019. I'll deny this portion of Mayek's motion. It's possible that there is still surveillance video available that Mayek would want. Before filing another motion, Mayek should confer with counsel with more specific requests for surveillance footage.

Mayek also says that he "wishes to look for any proof of an attempt to cover-up any information that [he] feels may be pertinent in this claim," stating that he has already has prison documents stating that a doctor at the hospital stated that he should return in three days if his symptoms worsen, and that a nurse at the hospital talked to prison medical staff in mid-June about performing a surgery on the facture, but Mayek was not informed about either of those communications. Dkt. 44, at 3. Mayek can use discovery methods to request documents regarding communications between prison staff and the hospital. He doesn't say that defendants have stonewalled his request for this type of documents, so there's no reason to consider a motion to compel on this issue.

In another motion, Mayek asks the court to compel Warden Boughton to allow him to obtain declarations from prison staff and inmates. Dkt. 45. He states that at least a few staff members have turned him down. This isn't the proper subject of a discovery motion aimed at Boughton because he's not the person from whom Mayek seeks information. And in any event, the Federal Rules of Civil Procedure do not require either parties or non-parties to sign declarations, and this court cannot force them to.

In his reply, Mayek clarifies that he's not asking to compel Boughton to force anyone to give a declaration; he says that prison rules don't allow staff to give statements about prison operations and that inmates aren't allowed to communicate with inmates on other units unless the warden gives permission. So Mayek's motion is really one for a preliminary injunction

9

contending that Boughton is interfering with Mayek's access to the courts. But Mayek falls far short of showing that this is one of the rare occasions in which the court must intervene because a defendant is actively blocking the plaintiff from litigating the case. For instance, Mayek does not state that he's asked Boughton for permission to contact anyone to take a declaration and that Boughton has denied him permission. I will deny his motion. Before attempting the injunction route again, Mayek should consider using the discovery methods outlined in the Federal Rules of Civil Procedure.

**C. Motion for sanctions**

Mayek has filed a motion asking the court to remove one of the attorneys for the state defendants from this case and to reprimand her for "prosecutorial misconduct." Dkt. 115.

Mayek believes that counsel has worked with prison staff to withhold proper discovery from him. He states that to prove that he had difficulty walking, he requested video footage of him walking to from Delta Unit to the Health Service Unit and back on a particular day, but the footage he received was from cameras much further way than others that would have provided a better look at his gait. Counsel responds that she relies on prison staff to interpret requests for video footage like Mayek's and that staff though he meant that he wanted footage from the Delta Unit. She adds that after Mayek filed his sanctions motion, she worked with staff to locate other camera footage that they will make available to Mayek. In reply, Mayek says that the originally provided footage wasn't from the Delta Unit as counsel suggests. Regardless, nothing in Mayek's motion suggests that the problem here was the result of counsel intentionally sabotaging the discovery, as opposed to a simple mistake or miscommunication in procuring the video. I'll deny this portion of his motion for sanctions. Mayek should work

out this discovery issue by conferring with counsel, and if need be, filing a motion to compel discovery.

Mayek also alleges that counsel is attempting to prevent him from obtaining audio and video of him screaming in pain and asking for medical attention. I take him to be referring to discovery that is the subject of his motions to compel above. Counsel's responses in those motions raised colorable arguments opposing his motions to compel and do not raise any reason to sanction counsel. I'll deny this portion of his motions for sanctions as well.

### D. Recruitment of counsel or expert

Mayek renews his request for the court's assistance in recruiting him counsel. Dkt. 47. I previously denied his request because he hadn't shown that he had made reasonable efforts to locate an attorney on his own and because he hadn't shown that the case was too complicated for his abilities. *See* Dkt. 20. Mayek has now explained that he has contacted three attorneys but none of them have agreed to represent him. So he has made reasonable efforts to locate a lawyer himself.

Nonetheless, I will deny his motion because he still has not shown that the case is too complicated for him to handle. He says that he has a limited formal education and no legal training, but that doesn't distinguish him from most of the inmates who file federal lawsuits in this court. And although he is not receiving all the relief he seeks in this opinion, his filings thus far have been relatively well written and show his understanding of the relevant legal questions at issue. So I will deny his motion, again without prejudice to him refiling it later in the case. But if he does refile his motion, he will need to explain what specific litigation tasks he cannot perform himself.

Mayek has also filed a motion for the court to appoint him a medical expert under Wisconsin Statute § 907.02. Dkt. 82.[1] That statute doesn't apply to a case in this federal court, although the court may appoint an expert under Federal Rule of Evidence 706. Rule 706 allows a court to appoint a neutral expert when doing so is necessary to help the court or the jury interpret complex information. Fed. R. Evid. 706(a); *DeJesus v. Godinez*, 720 F. App'x 766, 772 (7th Cir. 2017). I will deny the motion because it's too early in the case to tell whether the relatively rare step of appointing an expert will be necessary to assist the court. In addition, at this point Mayek seems to be asking for an expert to support his own case. But that is not the purpose of a court-appointed expert. *See Dobbey v. Carter*, 734 F. App'x 362, 364–65 (7th Cir. 2018) ("But Federal Rule of Evidence 706 allows appointment of an expert witness if necessary to help the court understand the issues, not to assist a party in preparing his case.").

### E. Mayek's remaining motions

Mayek has filed a motion for a ruling that he has exhausted his administrative remedies regarding his claims, Dkt. 77, but it is premature to do so: defendants haven't filed an exhaustion motion and most of them have only just been added to the case as the Doe defendants.

Mayek submits two CT scan images of his spine and abdomen and he has filed a motion to enter those scans into evidence. Dkt. 116. I'll deny that motion because parties need to submit evidence to the court only when it is necessary to support a motion filed by one of the parties. There aren't any pending motions for which evidence is necessary. Similarly, Mayek

---

[1] The defendants have filed motions to join some of each other's filings, including defendant Gundersen Hospital's brief opposing Mayek's motion for appointment of an expert. *See* Dkt. 101 and Dkt. 109. I'll grant these motions, but they are unnecessary. A party file a notice that it joins another party's motion without permission of the court.

has filed a motion for specific hallway video be entered into evidence for viewing at trial. Dkt. 120. It's premature to make such a request, so I'll deny the motion.

## F. Schedule

Defendants have filed a series of motions for an extension of time to answer Mayek's operative complaint, to preserve their right to file motions for summary judgment on exhaustion grounds, or to stay the schedule altogether. Dkt. 60; Dkt. 64; Dkt. 65; Dkt. 108; Dkt 109. I'll grant those motions. After Mayek decides whether he's dismissing any defendants, and the remaining defendants answer the amended complaint, the court will hold a scheduling conference with Magistrate Judge Stephen Crocker to reset the schedule in this case.

## ORDER

IT IS ORDERED that:

1. Plaintiff Gerald Scott Mayek's motion for leave to amend his complaint, Dkt. 40, is GRANTED. The court will treat Dkts. 41–43 as the operative complaint.

2. Plaintiff is now GRANTED leave to proceed on Eighth Amendment claims against:

   - Defendant Eileen Gavin.

   - Defendant correctional officers Roth, Ellefson, Roach, Payne, Dicken, Gallinger, Weigel, A.J. Brown, Fishnick, Jaynes, Fedie, Castel, Thode, Miller, and Meyers, and defendant correctional sergeants Ward, Green, Henneman, Tierney, Zimmer, Primmer, Jones, Allen, Miller, and Lathrop.

   - Defendant nurse practitioner Sandy McArdle and defendant nurses Erin Wehrle, Mike Kemerling, Becky Kramer, Julia Pintz, and Jeremy Richardson.

3. Plaintiff is also GRANTED leave to proceed on Wisconsin-law medical malpractice claims against defendants Paul Mariskanish and Gundersen Boscobel Area Hospital.

4. Plaintiff's motion to add several new defendants, Dkt. 84, is GRANTED in part. The state's Injured Patients and Families Compensation Fund is added to the caption as a defendant.

5. Plaintiff's motion to add Wellhart LLC as a defendant, Dkt. 74, is DENIED.

13

6. Plaintiff's motion to join defendants, Dkt. 107, is DENIED.

7. Plaintiff's motion to withdraw his proposed supplement to the complaint, Dkt. 121, is GRANTED.

8. Plaintiff's motions to compel discovery, Dkt. 44 and Dkt. 45, are DENIED.

9. Plaintiff's motion for sanctions against opposing counsel, Dkt. 115, is DENIED.

10. Plaintiff's motion for the court's assistance in recruiting him counsel, Dkt. 47, is DENIED without prejudice.

11. Plaintiff's motion for the court to appoint an expert, Dkt. 82, is DENIED.

12. Defendants' motions to join each other's filings, Dkt. 101 and Dkt. 109, are GRANTED.

13. Plaintiff's motion for a ruling on exhaustion of administrative remedies, Dkt. 77, is DENIED.

14. Plaintiff's motions to enter evidence, Dkt. 116 and Dkt. 120, are DENIED.

15. Plaintiff may have until March 29, 2021, to respond to this order by explaining whether he chooses to dismiss any of the defendants.

16. Defendants' motions to amend the schedule, Dkt. 60; Dkt. 64; Dkt. 65; Dkt. 108; Dkt 109, are GRANTED. The current schedule is STRUCK. The clerk of court is directed to set a scheduling conference with Magistrate Judge Stephen Crocker after defendants answer the amended complaint.

Entered March 15, 2021.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge