IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

GERALD SCOTT MAYEK,

                 Plaintiff,

  v.

GUNDERSEN BOSCOBEL AREA HOSPITAL,
EILEEN GAVIN, C.O. ROTH, C.O. ELLEFSON,
C.O. PAYNE, C.O. GALLINGER, C.O. WEIGEL,
C.O. JAYNES, C.O. FEDIE, C.O. CASTEL,
C.O. THODE, C.O. MILLER, C.O. MEYERS,           OPINION and ORDER
SGT. GARY WARD, SGT. HENNEMAN,
SGT. TIERNEY, SGT. ZIMMER, SGT. PRIMMER,           19-cv-811-jdp[1]
SGT. JONES, SGT. ALLEN, SGT. MILLER,
SGT. LATHROP, LT. KOLBO, MIKE KEMERLING,
BECKY KRAMER, JULIA PINTZ,
JEREMY RICHARDSON, PAUL MARISKANISH, and
WISCONSIN INJURED PATIENTS AND FAMILIES
COMPENSATION FUND,

                 Defendants.

---

This opinion concerns five cases filed by plaintiff Gerald Scott Mayek, who appears pro se. Mayek brought two cases alleging that Wisconsin Secure Program Facility staff and outside providers failed to adequately treat his fractured vertebra, Case Nos. 19-cv-811-jdp and 21-cv-151-jdp, and a third case about prison staff failing to treat severe mouth and tongue pain he suffered from erosive oral lichen planus, Case No. 21-cv-73-jdp. The parties settled those three cases at mediation, after which I dismissed the cases. Dkt. 206.[2] Mayek seeks to reopen all three of those cases, contending that various groups of defendants failed to fulfill their

---

[1] The clerk of court is directed to also docket this opinion in Case Nos. 21-cv-73-jdp, 21-cv-151-jdp, 22-cv-22-jdp, and 22-cv-36-jdp.

[2] All docket citations are to Case No. 19-cv-811-jdp, unless otherwise noted.

obligations under the settlement agreement by paying him their share of the settlement amount. Dkt. 208; Dkt. 224.

Also, before dismissal of those three cases, Mayek filed two more cases in this court: Case No. 22-cv-22-jdp, about correctional officers forcing him to sit in a transport van longer than necessary despite knowing that he suffered severe pain from prolonged sitting, and Case No. 22-cv-36-jdp, about prison officials transferring him out of the institution despite knowing that it would prevent him from receiving adequate medical treatment for his chronic inflammatory condition. The defendants in those cases, represented by the Wisconsin Department of Justice, have filed motions for judgment on the pleadings in those cases, contending that the settlement agreement from Mayek's first three cases releases them from any claims against state employees concerning events predating the settlement. Mayek contends that the state defendants misled him into signing an agreement containing such a broad release clause. He opposes the state defendants' motions for judgment on the pleadings in his two newer cases, and he seeks to reopen his three settled cases on the grounds that the settlement is void for the state defendants' misconduct. Dkt. 234.

For the reasons stated below, I will deny Mayek's motions to reopen the already-settled cases in all respects but one: I will require a response from the one defendant for which there is no evidence that it has satisfied the terms of the settlement agreement. The state defendants' motions for judgment on the pleadings seeking to close Mayek's two newer cases are improper because the validity of the settlement agreement's release clause is not an issue that cannot be resolved on the pleadings. I will direct the clerk of court to schedule an evidentiary hearing to resolve the matter.

2

ANALYSIS

**A. Motion to reopen claims against defendants Gavin, Gross, and Gundersen Hospital**

District courts have the authority to enforce settlement agreements in cases pending before them. *Wilson v. Wilson*, 46 F.3d 660, 664 (7th Cir. 1995) ("[A] district court possesses the inherent or equitable power summarily to enforce an agreement to settle a case pending before it."). Although these cases have been closed, I dismissed them by entering an order stating that "[a]ny party may move to reopen the cases for good cause." Dkt. 206. Because a settlement agreement is a contract between the parties to the litigation, its enforceability is governed by state contract law. *Beverly v. Abbott Labs.*, 817 F.3d 328, 333 (7th Cir. 2016).

Mayek contends that there are various irregularities with the parties' settlement agreement and defendants' conduct afterward that justifies reopening his three closed cases. The parties agree that each defendant was given 30 days following the execution of the settlement agreement to contribute a share of the funds that Mayek accepted to close the cases. But some of the defendants failed to submit a check to Mayek within 30 days. Mayek has filed a motion to reopen his claims against defendants Dr. Eileen Gavin, Dr. Michael Gross, and Gundersen Boscobel Area Hospital for their failure to pay him the agreed-upon amounts. Dkt. 224.

At least some of these defendants paid Mayek after he filed his motion. A few days before Mayek's motion, counsel representing Gavin and Gross sent Mayek a letter stating that they would shortly submit a check to him. Dkt. 223. Counsel later followed with a declaration stating that they sent Mayek a check on behalf of Gavin and Gross. Dkt. 227. Mayek doesn't dispute counsel's statement that Gavin and Gross have fulfilled their obligation under the

settlement agreement. Mayek doesn't show good cause to reopen his claims against Gavin or Gross, so I will deny this portion of his motion.

Defendant Gundersen Hospital did not file confirmation of payment or otherwise respond to Mayek's motion. I will direct the hospital to show cause why Mayek's claims against it shouldn't be reopened.

**B. Motion to reopen claims against defendants Mariskanish, Brieske, and Injured Patients and Families Compensation Fund**

Mayek has also filed a motion to reopen his claims against defendants Dr. Paul Mariskanish, Dr. Timothy Brieske, and the state's Injured Patients and Families Compensation Fund. Dkt. 208.[3] Mariskanish and Brieske were both represented by Attorney Douglas S. Knott. Mayek contends that Knott did not participate in the mediation and in fact rejected the idea of a settlement.

A couple of days before the mediation videoconference with Magistrate Judge Peter Oppeneer, Knott submitted a letter to the magistrate stating that he considered Mayek's claims meritless and had no intention of settling, and asking to be excused from the mediation. But Mayek didn't get a copy of this letter until after a settlement agreement had been reached. Additionally, Mayek says that Knott did not participate in the video mediation or sign the settlement agreement. But Mayek "is taking Mr. Oppeneer's word" that someone named "Andrew" attended the mediation on behalf of Mariskanish and Brieske, Dkt. 216, at 2, and he concedes that Knott's firm sent Mayek a check for Mariskanish's and Brieske's portions of the settlement.

---

[3] After his reply to this motion, Mayek filed a motion for leave to file a supplemental brief, Dkt. 229, which I will grant.

Knott states that after he sent the letter asking to be excused from the mediation, Magistrate Judge Oppeneer requested that "[his] firm participate and monitor the mediation, which it did" and when the mediation had concluded, "Magistrate Oppeneer advised [them] that Mr. Mayek had agreed to dismiss all of the matters with prejudice upon agreement of each individual defendant to pay a nominal amount to Mr. Mayek. [Knott's] firm agreed to pay the nominal amount recommended by Magistrate Judge Oppeneer and has now done so." Dkt. 214.

Mayek states that he "feels that this settlement agreement was made in bad faith under false pretenses" and "that had he been aware of Mr. Knott's comments before negotiations had started that he would not have agreed to any settlement." Dkt. 208, at 2. Knott's pre-mediation comments about Mayek's claims being meritless and his unwillingness to settle the claims are not good cause to reopen the claims against Mariskanish and Brieske. Parties routinely disagree about the merits of a plaintiff's claims before settling a case; that doesn't mean the eventual settlement is in bad faith.

The issue of Mariskanish and Brieske's participation in the settlement agreement—or lack thereof—is a closer call. Mayek states that Knott didn't sign the settlement agreement. The copies of the settlement that Mayek and the state defendants provide do not include Mariskanish and Brieske in the defined list of defendants who are parties to the agreement, and they do not include Knott's signature (or anyone else's) on behalf of Mariskanish and Brieske. *See* Dkt. 229, Dkt. 240-1. The agreement includes a provision that the document may be executed in counterparts, but there is no suggestion by any party that Knott signed a different version of the settlement.

5

Nonetheless, it is undisputed that all the parties understood Mayek's three cases to have been settled at the mediation, and that Knott did send Mayek a check for Mariskanish's and Brieske's portions of the settlement. Under Wisconsin law, settlement agreements are enforceable only if they are (1) made in writing; or (2) made in court and entered in the minutes or recorded. Wis. Stat. § 807.05. This law is "in the nature of a statute of frauds." *In re Est. of Johnson*, 2006 WI App 19, ¶ 10, 289 Wis. 2d 100, 709 N.W.2d 88 (internal quotations omitted). There is no evidence that Mariskanish and Brieske formally executed a written agreement. But their verbal agreement is enforceable in this case because the terms of the settlement were negotiated during a settlement conference with a federal magistrate judge and were memorialized in an audio recording:

> MAGISTRATE JUDGE OPPENEER: So we've agreed to settle those . . . three cases, all the claims and defendants in those three cases, in exchange for a collective payment by the defendants of $7,000 to the plaintiff. . . . The agreement will not be confidential in whole but will be with respect to the specific payments made by the non-Department of Corrections defendants.

The audio recording confirms that both sides understood and accepted the agreement. The notice of settlement was entered in the minutes. *See* unnumbered March 3, 2022 docket entry). These steps satisfy the requirements of Wis. Stat. § 807.05, because the settlement was made in court, was recorded, and was docketed into the court's record. Both this court and the Court of Appeals for the Seventh Circuit have upheld verbal settlement agreements in similar circumstances. *See Harmon v. Wisconsin Reg'l Training P'ship*, 833 F. App'x 1, 2 (7th Cir. 2020) (affirming district court's enforcement of a verbal settlement agreement under Wisconsin law, where parties reached settlement after mediating before a magistrate judge, the magistrate recorded terms of settlement in audio recording, and the magistrate docketed a minute entry reflecting that the mediation resulted in settlement); *see also Harper v. Boughton*,

6

Case No. 19-cv-723-jdp, slip op. at 3 (W.D. Wis. Sept. 14, 2021) (upholding verbal settlement agreement memorialized at mediation). Because these parties executed a verbal settlement agreement, Mayek fails to show good cause for reopening his claims against Mariskanish and Brieske. I will deny that portion of his motion.

Mayek also seeks to reopen claims against the Wisconsin Injured Patients and Families Compensation Fund (the Fund). It doesn't appear that the Fund signed the settlement agreement either, but it is understandable why it didn't. The Fund states that its counsel explicitly told Mayek at the mediation that it could not contribute to the settlement unless a provider hit its $1 million limit under the Wisconsin malpractice statutes. Mayek doesn't bring direct substantive claims against the Fund; it is a defendant only so that Mayek can recover amounts in excess of defendants' insurance coverage for medical malpractice. *See* Wis. Stat. § 655.27(5). Should the cases be reopened with claims that will require the addition of the Fund, I will add the Fund back into the captions.

C. **Mayek's claims against state officials**

At the time of the parties' settlement in the '811, '73, and '151 cases, Mayek had two other open cases against Department of Corrections officials, Case Nos. 22-cv-22-jdp and 22-cv-36-jdp. The state defendants' answers to Mayek's complaints in those cases asserted a defense that the cases were barred by a release clause in the settlement agreement. The state defendants followed with motions for judgment on the pleadings in both cases, stating that Mayek's new claims are barred by the release. Dkt. 17 in the '22 case; Dkt. 17 in the '36 case.

More specifically, the settlement agreement states that in return for a settlement amount of $7,000, Mayek agreed to dismiss the '811, '73, and '151 cases and release the state

from further claims. Dkt. 240-1. The "release of claims" section of the agreement states as follows:

> In exchange for the consideration listed above, Plaintiff releases and forever discharges the Defendants, the State, DOC, and their respective officers, principals, agents, employers, employees, successors, personal representatives, and insurers (the "Released Parties") from any and all manner of action or actions (including cause or causes of action, suits, debts, covenants, agreements, liabilities, rights, compensatory damages, punitive damages, costs, claims of interest, awards of attorney fees, claims and demands of every kind and nature whatsoever, in law or equity, whether based on State or Federal law), that relate to any action or inaction—of any of the Released Parties—that took place on any date before this Agreement is fully executed.

*Id.* at 2.

It is undisputed that Mayek's allegations in the '22 and '36 cases involve events predating the execution of the parties' settlement agreement. The agreement contains a related covenant not to sue any released party for any matter discharged by the agreement, as well as a "reservation of rights" section stating that Mayek "reserves any and all rights he may have to challenge any future acts of any Defendants, DOC or other State employee." *Id.* at 3.

Mayek contends that the state defendants misled him into signing a release barring his '22 and '36 cases. He opposes closing those two cases and he also filed a motion to reopen his claims in the '811, '73, and '151 cases because the written agreement improperly added a release that was not part of the verbal agreement made at mediation.[4] Dkt. 234.

In Wisconsin, settlement agreements must be read to "give effect to the parties' intent, as expressed in the contractual language." *Setizinger v. Cmty. Health Network*, 2004 WI 28, ¶ 22,

---

[4] Mayek also filed a motion asking for permission to file his motion to reopen his claims against state officials, Dkt. 233, which I will grant.

270 Wis. 2d 1, 676 N.W.2d 426. "When the language of a contract is unambiguous, [a court will] apply its literal meaning." *Wisconsin Label Corp. v. Northbrook Prop. & Cas. Ins. Co.*, 2000 WI 26, ¶ 23, 233 Wis. 2d 314, 607 N.W.2d 276. But "[a] material misrepresentation of fact may render a contract void or voidable," and parties may submit extrinsic evidence in support of such a claim. *See Bank of Sun Prairie v. Esser*, 155 Wis. 2d 724, 731, 456 N.W.2d 585, 588 (1990); *see also Batt v. Sweeney*, 2002 WI App 119, ¶ 9, 254 Wis. 2d 721, 647 N.W.2d 868 ("Evidence of any fraud is sufficient to impeach a settlement.").

The settlement agreement here is unambiguous: the release-of-claim section states that Mayek has released state officials "from any and all manner of action or actions . . . that relate to any action or inaction—of any of the Released Parties—that took place on any date before this Agreement is fully executed." Dkt. 240-1 at 2. And the reservation-of-rights section states only that Mayek reserved the right to challenge *future* acts of DOC or state employees. *Id.* at 3. If valid, the release covers Mayek's claims in the '22 and '36 cases because they are claims concerning harm occurring before the date of settlement.

Mayek contends that opposing counsel misled him into thinking that the release covered only actions or inactions related to the '811, '73, and '151 cases. He says that the parties did not discuss the '22 or '36 cases during the mediation. And on the face of the settlement agreement, the parties explicitly agreed to dismiss the '811, '73, and '151 cases but the agreement does not mention the '22 or '36 cases. Thus I take Mayek to be alleging that counsel omitted to tell him that they inserted a provision effectively settling the '22 and '36 cases for no additional benefit to him.

Wisconsin contract-law principles reveal multiple potential flaws with defendants' release defense. The type of misrepresentation by omission that Mayek raises here could

9

support a fraudulent misrepresentation claim. Failure to disclose a fact is a misrepresentation if a party has a duty to disclose that fact. *Hennig v. Ahearn*, 230 Wis. 2d 149, 165, 601 N.W.2d 14, 22 (Ct. App. 1999) ("'If there is a duty to disclose a fact, failure to disclose that fact is treated in the law as equivalent to a representation of the nonexistence of the fact.'" (quoting *Ollerman v. O'Rourke Co., Inc.*, 94 Wis. 2d 17, 26, 288 N.W.2d 95, 100 (1980))). This line of cases relies largely on Restatement (Second) of Torts § 551(2)(e) (1977), which states that a party to a business transaction has a duty to disclose

> facts basic to the transaction, if he knows that the other is about to enter into it under a mistake as to them, and that the other, because of the relationship between them, the customs of the trade or other objective circumstances, would reasonably expect a disclosure of those facts.

In determining whether counsel had the duty to disclose the scope of the release to Mayek, the key question is whether Mayek would reasonably expect disclosure of that provision. *Hennig*, 601 N.W.2d at 22. The Restatement states:

> In general, the cases in which [§ 551(2)(e)] has been applied have been those in which the advantage taken of the plaintiff's ignorance is so shocking to the ethical sense of the community, and is so extreme and unfair, as to amount to a form of swindling, in which the plaintiff is led by appearances into a bargain that is a trap, of whose essence and substance he is unaware.

Restatement (Second) of Torts § 551 cmt. *l*.

Although the question whether counsel had a duty to disclose the scope of the release is a policy decision that is a question of law, that decision depends on the circumstances surrounding that decision as determined by the fact finder:

> "If there are disputed facts bearing upon the existence of the duty, as for example the defendant's knowledge of the fact, the other's ignorance of it or his opportunity to ascertain it, the customs of the particular trade, or the defendant's knowledge that the plaintiff reasonably expects him to make the disclosure, they are

10

>to be determined by the jury under appropriate instructions as to the existence of the duty."

*Hennig*, 601 N.W.2d at 23 (quoting Restatement (Second) of Torts § 551 cmt. m.).

To support a misrepresentation theory, Mayek must also show that he justifiably relied on counsel's failure to point out that the settlement agreement contained a release that would cover the '22 and '36 cases. *Id.* The recipient of a fraudulent misrepresentation is justified in relying on it unless the falsity is actually known or is obvious to ordinary observation. *Id.* at 24. The issue of justifiable reliance is a question of law, but whether a falsity is obvious is usually a question of fact. *Id.* Mayek says that he didn't actually read the written agreement before signing it because he received it on his way to a medical appointment, he didn't have his reading glasses, and he assumed that it accurately reflected the verbal agreement that the parties had reached at mediation. A party's failure to read the contract is only one factor in considering the totality of the circumstances surrounding the transaction. *Id.*; *see also Batt*, 2002 WI App 119, ¶ 15 ("when fraud is pled, the facts of each case that shall be considered must include the intelligence and experience of the misled individual(s) and the relationship between the parties to determine whether the individual(s) acted reasonably when relying on the misrepresentation.").

Alternatively, mistake is another potential ground for disregarding the release: in Wisconsin, reformation of a contract is appropriate when it "fails to express the intent of the parties, either because of the mutual mistake of the parties, or because of [unilateral mistake] coupled with fraud or inequitable conduct of the other." *Id.* at 26. The facts necessary to prove a reformation claim must be shown by clear and convincing evidence. *Prezioso v. Aerts*, 2014 WI App 126, ¶ 39, 358 Wis. 2d 714, 858 N.W.2d 386; *Hennig*, 601 N.W.2d at 27.

Under a theory of unilateral mistake with fraud, Mayek would have to show that he mistakenly believed that the settlement agreement represented the terms to which he had agreed (settlement of only the '811, '73, and '151 cases), which induced him to sign it, and that counsel knew that Mayek was mistaken but did nothing to correct that misapprehension. *Id.* at 27. As with a misrepresentation claim, a party asserting a unilateral mistake with fraud theory must establish that his reliance on counsel's misrepresentation by omission was justified. *Id.*

Although Mayek suggests that counsel intentionally misled him by including the broad release language, that's not the only reasonable inference from the record. Another possibility is that just like Mayek, counsel did not intend to resolve the '22 and '36 cases with the release. Under the doctrine of "mutual mistake," a contract may be reformed when the "'writing that evidences or embodies an agreement in whole or in part fails to express the agreement because of a mistake of both parties as to the contents or effect of the writing.'" *Vandenberg v. Cont'l Ins. Co.*, 2001 WI 85, ¶ 50, 244 Wis. 2d 802, 628 N.W.2d 876 (quoting Restatement (Second) of Contracts § 155 (1981)).

Based on the sparse record before me, Mayek's situation seems quite similar to a recent case in which I denied the state's request to dismiss as a matter of law a pro se prisoner's lawsuit pursuant to the state's release-of-claims language in a settlement agreement from a previous case brought by that prisoner. *See Talley v. Hoffman*, No. 14-cv-783-jdp, 2022 WL 767048 (W.D. Wis. Mar. 14, 2022). In particular I stated the following about the high likelihood of mutual mistake:

> If counsel were trying to settle both cases, the customary way to do so would be either to explicitly propose a global settlement or to settle each case sequentially. It is exceedingly unlikely that a competent ethical attorney would intentionally attempt to

12

> dispose of a group of two active cases by entering into an explicit agreement to settle only one of the cases while leaving the second case to be implicitly resolved by the release of claims. One obvious reason not to try that strategy is the high likelihood of it backfiring as it has here, with additional litigation caused by the confusion over whether the parties actually agreed to effectively settle both lawsuits with an agreement explicitly mentioning only [one of the cases].

*Id.* at *4.

In *Talley* I concluded that the record was not clear enough to determine as a matter of law whether I should apply or disregard the settlement agreement's release clause. The same is true here. So as in *Talley* I will convert the state defendants' motions for judgment on the pleadings into motions for summary judgment. Because the analysis may turn on the credibility of counsel's or Mayek's testimony about their intent in signing the settlement agreement and their understanding of the consequences of the agreement, I will direct the clerk of court to schedule an evidentiary hearing to take testimony from Mayek and counsel about the process by which they reached settlement and to hear argument on the issues discussed in this opinion. The parties should seek permission from the court if they wish to call any other witnesses.

Mayek goes a step further by asking for the '811, '73, and '151 cases to be reopened because of the allegedly fraudulent written settlement agreement. But just as with defendants Mariskanish and Brieske, Mayek and the state defendants already entered into a verbal settlement agreement at mediation that closed those cases. Even if I conclude after a hearing that the release clause in the written agreement was procured by misrepresentation or mistake, Mayek and the state defendants would be bound by the previous verbal agreement. I note that in his reply, Mayek seems to have backed off his request to reopen the closed cases, stating, "I just want to honor our oral settlement agreement." Dkt. 241, at 5. Even under the verbal

13

agreement, the '811, '73, and '151 cases would remain closed. So I will deny Mayek's motion to reopen those cases.

## ORDER

IT IS ORDERED that:

1. Plaintiff Gerald Scott Mayek's motion to reopen his claims against defendants Gavin and Gross, Dkt. 224, is DENIED.

2. Defendant Gundersen Boscobel Area Hospital may have until March 15, 2023, to respond to plaintiff's motion to reopen his claims against it, Dkt. 224.

3. Plaintiff's motion for leave to file a sur-reply brief, Dkt. 229, is GRANTED.

4. Plaintiff's motion to reopen his claims against defendants Mariskanish, Brieske, and Wisconsin Injured Patients and Families Compensation Fund, Dkt. 208, is DENIED.

5. Plaintiff's motion for leave to file a motion to reopen his claims against state officials, Dkt. 233, is GRANTED.

6. Plaintiff's motion to reopen his claims against the state defendants, Dkt. 234, is DENIED.

7. The clerk of court is directed to schedule an evidentiary hearing on defendants' motions to dismiss Case Nos. 22-cv-22-jdp and 22-cv-36-jdp pursuant to the settlement agreement in Case Nos. 19-cv-811-jdp, 21-cv-73-jdp, and 21-cv-151-jdp.

Entered March 2, 2023.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge